IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| JASON RAY PHILLIPS | § | |
| VS. | § | CIVIL ACTION NO. 1:20-cv-407 |
| UNITED STATES OF AMERICA | § | |

REPORT AND RECOMMENDATION
<u>OF UNITED STATES MAGISTRATE JUDGE</u>

Movant Jason Ray Phillips, a federal prisoner at the Federal Correctional Institution in Greenville, Illinois, proceeding *pro se*, filed this Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.

The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

<u>Factual Background</u>

On June 11, 2019, pursuant to a written plea agreement, Movant appeared before a United States magistrate judge and pleaded guilty to Count One of the indictment against him. Count One charged Movant with conspiracy to possess with intent to distribute a controlled substance, namely 50 grams or more of methamphetamine ("actual"), in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. On January 10, 2020, the court entered judgment and sentenced Movant to a term of 164 months' confinement, five years' supervised release, and a $100.00 special assessment. *United States v. Phillips*, No. 1:18cv106 (E.D. Tex. Jan 10, 2020) (doc. # 289). On January 16, 2020, the court entered an amended judgment to reflect that a 24-month downward adjustment was included in the sentence for time already served for conduct relevant to the federal

offense. *Id.* (Doc. #297). The court entered a second amended judgment on October 13, 2020 and reduced Movant's sentence to 152 months' imprisonment, reflecting a 36-month total downward departure for additional time served for relevant conduct. *Id.* (Doc. #373). Movant did not appeal his conviction or sentence.

The factual background for this case was provided in the Factual Basis as follows:

[H]ad this matter proceeded to trial, the Government, through the testimony of witnesses, including expert witnesses, and through admissible exhibits, would have proven, beyond a reasonable doubt, each and every essential element of the offense alleged in the indictment; specifically, the Government would have proven the following stipulated facts:

a. On or about September 9, 2015, agents with the DEA received information that a person known as Edgar Mejia, a/k/a "Throwed" was involved in the distribution of multi-kilograms of methamphetamine in the Houston area. Agents began investigating Mejia's drug trafficking and utilized a Confidential Source (CS) and introduced an undercover (UC) officer into Mejia's organization. The CS and UC made five (5) hand-to-hand purchases from Mejia for a total of 983 grams of methamphetamine "actual." The hand-to-hand transaction between the UC and Mejia on August 12, 2016 [] occurred in Beaumont, Texas, which is within the Eastern District of Texas.

b. While these transactions were occurring, agents were able to activate two (2) Title III wiretaps on Mejia's cell phones in order to further the investigation. Based on these interceptions, on September 21, 2016, agents were able to witness Mejia del[i]ver an amount of methamphetamine to Jason Phillips, a/k/a "Lil Hitler," who then delivered to another unindicted co-conspirator. The unindicted co-conspirator was stopped on a traffic violation in Houston, Texas and was found to have approximately four (4) ounces of methamphetamine inside his vehicle. The substance was submitted to the DEA Crime Lab for Analysis and was determined to [sic] 91.24 grams of methamphetamine "actual." On September 27, 2016, officers with the Montgomery County (TX) Sheriff's Office conducted a traffic stop on a vehicle being driven by another unindicted co-conspirator and he was found in possession of approximately two (2) ounces of methamphetamine. The interceptions of Mejia's phone calls and surveillance showed that Mejia was the supplier of that methamphetamine. The substance was submitted to the DEA Crime Lab for analysis and was determined to be 53.04 grams of methamphetamine "actual." Phillips was also intercepted on the TIII wire intercepts involved in the purchase of an additional 1.35 kilograms of methamphetamine.

c.  Thereafter, based upon the TIII wire intercepts and surveillance, the agents were able to determine that Mejia's main source of supply for the methamphetamine was Manuel Alejandro Perrett, a/k/a "Meme[,]" and a Title III wiretap was initiated on Perrett's telephone.  On October 5, 2016 agents were able to intercept calls between Perrett and others that indicated that drug transactions would soon occur.  Agents began surveillance of Perrett's residence/stash house in Houston, Texas and observed a person later identified as Carlos Pacheco-Anguiar arrive at Perrett's residence and leave a short time later.  The vehicle occupied by Pacheco-Anguiar was observed meeting with another unknown person before being stopped on a traffic violation.  Pacheco-Anguiar was found to have $6,990 in cash ($6,900 is the amount Perrett paid for a kilogram of methamphetamine) in his center console of his vehicle.  The wire intercepts confirmed that this money was to be returned to Perrett for the sale of a kilogram of methamphetamine.  Pacheco-Anguiar was also intercepted discussing his delivery of an additional 3 ½ kilograms for Perrett.

d.  Agents were also able to determine that a person identified as Antonio Ivan Cisneros, a/k/a "Fluff," lived at Perrett's stash house and was known to deliver methamphetamine from that location.  On October 19, 2016, based on the continued intercepts of Perrett's phone, agents became aware that Perrett received a new shipment of methamphetamine and that he would be distributing pound[] amounts to his purchasers.  Officers with the Harris County Sheriff's Office assisted the federal agents in this investigation and conducted traffic stops on vehicles seen leaving that residence.  One of the vehicles stopped leaving the stash house was also stopped on a traffic violation that same night and was found to be occupied by Jesus Jaime Perrett (Manual Perrett's brother) and Cisneros.  No narcotics were found in the vehicle, however, later intercepted calls revealed that Cisneros had the methamphetamine hidden on his person.  Additional phone calls on that same day indicated that Mejia and Noe Gonzalez, Jr., a/k/a "El Viejo"  were separately going to be arriving to pick up quantities of methamphetamine.

e.  On October 19, 2016, officers observed a vehicle being driven by Mejia arrive at another residence known to be used by Mejia and Perrett to distribute methamphetamine.  Agents observed a person identified as Kenneth Rivas get in the vehicle with Mejia and both looked under the hood of Mejia's vehicle prior to them both leaving the residence in Mejia's vehicle.  Approximately one (1) hour later, Mejia's vehicle was stopped in Beaumont, Texas, which is in the Eastern District of Texas, by Jefferson County Sheriff's officers.  The officers detected the smell of [marijuana] from inside the vehicle and upon searching it, discovered approximately 160 grams of methamphetamine inside the engine compartment and a small amount of [marijuana] inside the vehicle.  The substance believed to be methamphetamine was submitted to the DEA Crime Lab for analysis and was determined to be 133.1 grams of methamphetamine "actual."  Rivas was also intercepted on the TIII phones discussing his possession with intent to distribute at least another 14 ounces of methamphetamine.

[f.] Additionally, on October 19, 2016, agents intercepted additional calls between a person known as "El Viejo" (later positively identified as Noe Gonzalez, Jr.) and Perrett that Gonzalez would meet Perrett at the stash house on Balmorhea to purchase methamphetamine. Agents observed Gonzalez leave the stash house and meet with another two unindicted co-conspirators in a different car at a convenience store. The vehicle carrying the two unindicted co¬conspirators was stopped on traffic and both occupants were found to have warrants for their arrests. A search incident to arrest led to the officers locating a .22 cal. Pistol and approximately five (5) ounces of methamphetamine. That substance was analyzed by the DEA Crime Lab and was determined to be 130.5 grams of methamphetamine "actual."

[g.] The following day, agents observed Gonzalez leaving the Balmorhea stash house driving another vehicle. That vehicle was stopped and the officers confirmed that the driver was Noe Gonzalez, Jr.. Officers located $2,382.00 on Gonzalez [] and a small amount of [marijuana] in the vehicle. The TIII wire interceptions also indicate that Gonzalez was involved in the possession with intent to distribute at least another five (5) ounces of methamphetamine.

[h.] On December 7, 2016, Mejia agreed with agents to approach Perrett at the Balmorhea stash house to determine if methamphetamine and guns were being stored at that location. Mejia advised the agents that Perrett only had one (1) ounce of methamphetamine inside the stash house and the agents decided not to pursue any other law enforcement action at that time. However, immediately after speaking with the agents, Mejia contacted the UC that he had made previous sales of methamphetamine to and agreed to sell the UC one-half (½) kilogram of methamphetamine. The agents conducted surveillance on Mejia and observed him make several stops before heading to the location to meet the UC. Harris Co. Sheriff's Deputy attempted to stop Mejia and prior to stopping his vehicle the officers observed Mejia throw something out the window of his vehicle. The driver was identified as Rodolfo Guardado and the passenger was identified as Mejia. A search of the vehicle revealed a bag of [marijuana] in the center console and in plain view on the back seat, a white plastic container in a plastic bag containing methamphetamine. The substance and packaging was submitted to the DEA Crime Lab for analysis and the methamphetamine was determined to be 295.1 grams of methamphetamine "actual." The lab was also able to retrieve the prints of Guardado from the methamphetamine packaging. After arresting Mejia and Guardado, Mejia provided the agents with consent to search his residence in Houston and agents located an additional quantity of methamphetamine and an AK-47 in between his mattress and box spring. The methamphetamine was determined by the DEA Crime Lab to be 147.8 grams of methamphetamine "actual."

[I.] On April 26, 2018 a DPS undercover officer (DPS UC) made arrangements to purchase two (2) ounces of methamphetamine from a person identified as Roy Botello in Houston, Texas. Roy Botello and a female approached the DPS UC while the DPS UC was sitting in his car. The DPS UC observed Roy Botello to be holding

a green plastic bag and Roy Botello asked if the DPS UC had the money.  The DPS UC paid Roy Botello the money and Roy Botello handed the DPS UC the green plastic bag that contained approximately two (2) ounces of methamphetamine.  The substance was submitted to the DEA Crime Lab and was determined to be 53.8 grams of methamphetamine "actual."

[j.]  On May 4, 2018 the DPS UC made arrangements to purchase another 16 ounces of methamphetamine from Roy Botello.  During the negotiations, Roy Botello advised the DPS UC that he was being supplied by his cousin.  Roy Botello and the DPS UC agreed to meet at a Kroger parking lot in Houston, Texas.  A vehicle parked near the DPS UC vehicle at that location and motioned the DPS UC over to their car.  The driver, later identified as Anthony Botello, the cousin of Roy Botello, directed the DPS UC to drive to another location. The DPS UC refused and Anthony Botello showed the DPS UC that he had the 16 ounces of meth on his person. Anthony Botello then left the parking lot and returned a short time later with Roy Botello.  Roy Botello then got in the DPS UC vehicle where Roy directed Anthony to provide the narcotics being held on Anthony's person to Roy so the transaction could be completed.  When the DPS UC still refused to travel to another location, the DPS UC provided a signal to the other officers to converge on the scene and arrest Roy and Anthony Botello.  Both of the suspects fled on foot and the passenger in Anthony Botello's vehicle attempted to flee the scene in the vehicle.  The passenger was stopped and the officers located the bag shown to the DPS UC that contained the methamphetamine inside the vehicle.  This substance was submitted to the DEA Crime Lab and was determined to be 303 grams of methamphetamine "actual." After the arrest, agents were able to confirm through cooperators and intercepted calls that Perrett was the supplier of the methamphetamine supplied by the Roy and Anthony Botello.

[k.]  This investigation revealed that no less than 35 kilograms of methamphetamine was possessed with intent to distribute by the members of this Drug Trafficking Organization (DTO) and other co-conspirators in the Houston and the Beaumont, Texas areas. All of the narcotics seized or discussed on cell calls or texts in this case, as well as all the methamphetamine seized in this case were determined to be methamphetamine "actual" as determined by a DEA Lab analyst, a Schedule II controlled substance and was either distributed or possessed with intent to distribute.

[l.]  Jason Phillips, a/k/a "Lil Hitler," is a member of this conspiracy, who agreed with others named and unnamed in this indictment to distribute and possess with intent to distribute quantities of methamphetamine "actual."  Based upon the above described facts, Jason Phillips, a/k/a "Lil Hitler," is personally responsible for the possession with intent to distribute and/or the distribution of 1.45 kilograms of methamphetamine "actual" as part of this conspiracy.

*Phillips*, No. 1:18cv106 (Doc. #145 at *2-7).

## The Motion to Vacate

Movant brings this Motion to Vacate, Set Aside or Correct Sentence asserting that trial counsel provided ineffective assistance of counsel by:  (1) failing to argue a double jeopardy issue; (2) failing to argue a minimal role; (3) failing to argue for a lower sentence because he was not part of the conspiracy; (4) failing to argue for time credits; and (5) failing to inform him of his right to appeal.

## Standard of Review

A federal prisoner may move to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 on four separate grounds:  the sentence was imposed in violation of the constitution or laws of the United States; the court was without jurisdiction to impose the sentence; the sentence exceeds the statutory maximum sentence; and the sentence is "otherwise subject to collateral attack."  28 U.S.C. § 2255; *see United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995).

"Challenging a conviction and sentence with a section 2255 motion is 'fundamentally different from a direct appeal.'"  *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (quoting *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992)).  "After conviction and exhaustion or waiver of any right to appeal, 'we are entitled to presume that [the defendant] stands fairly and finally convicted.'"  *United States v. Shaid*, 937 F.2d 228, 231-232 (5th Cir. 1991), *cert. denied*, 502 U.S. 1076 (1992) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 164 (1982)).  "Thus, on collateral attack, a defendant is limited to alleging errors of a 'constitutional or jurisdictional magnitude.'"  *Samuels*, 59 F.3d at 528 (quoting *Shaid*, 937 F.2d at 232).  Relief under § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if condoned, would result in a complete miscarriage of

justice. *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).  Nonconstitutional claims that could have been raised on direct appeal may not be asserted in a 28 U.S.C. § 2255 proceeding. *Id.*

Analysis

*I.    Plea Agreement*

In this case, Movant pleaded guilty pursuant to a written plea agreement.  Movant's plea agreement advised him of his rights, the nature of the charges against him, and contained a waiver of the right to appeal or otherwise challenge his conviction and sentence.

Paragraph One of Movant's written plea agreement provides:

1.  **RIGHTS OF THE DEFENDANT**: The defendant understands that accused individuals have the following rights, among others:

  a. to plead not guilty;

  b. to have a trial by jury;

  c. to have guilt proved beyond a reasonable doubt;

  d. to confront and cross-examine witnesses and to call witnesses in defense; and

  e. to not be compelled to testify against oneself.

Paragraph Two provides:

2.  **WAIVER OF RIGHTS AND PLEA OF GUILTY**:  The defendant waives these rights and agrees to enter a plea of guilty to Count One of the indictment, which charges a violation of 21 U.S.C. § 846, conspiracy to possess with intent to distribute 50 grams or more of methamphetamine "actual."  The defendant understands the nature and elements of the crime to which guilt is admitted and agrees that the factual statement the defendant has signed is true and will be submitted as evidence.

Paragraph Three of the plea agreement provides:

3.  **SENTENCE:**  The minimum and maximum penalties the Court can impose include:

**COUNT ONE**

    a.      imprisonment for a period of not less than 10 years, and not to exceed life;

    b.      a fine not to exceed $10,000,000.00, or twice any pecuniary gain to the defendant or loss to the victim(s);

    c.      a term of supervised release of at least 5 years, which may be mandatory under the law and will follow any term of imprisonment. If the defendant violates the conditions of supervised release, the consequence could be imprisonment for the entire term of supervised release;

    d.      a mandatory special assessment of $100.00, which must be paid by cashier's check or money order to the United States District Clerk before sentencing;

    e.      forfeiture of property involved in or traceable to the criminal offense;

    f.      restitution to victims or to the community; and

    g.      costs of incarceration and supervision.

Paragraph Four of the written plea agreement provides:

    4. **COURT'S SENTENCING DISCRETION AND ROLE OF THE GUIDELINES**: The defendant understands that the sentence in this case will be imposed by the Court after consideration of the U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G. or guidelines). The guidelines are not binding on the Court, but are advisory only. The defendant has reviewed the guidelines with defense counsel, but understands that no one can predict with certainty the outcome of the Court's consideration of the guidelines in the case. The defendant will not be allowed to withdraw the plea entered pursuant to this agreement if the sentence is higher than expected, so long as it is within the statutory maximum. The defendant understands that the actual sentence to be imposed is solely in the discretion of the Court.

Paragraph Five of Movant's written plea agreement provides:

    5. **GUIDELINE STIPULATIONS:** The parties stipulate to the following factors that affect the appropriate sentencing range in this case:

    a.      The base offense level pursuant to U.S.S.G. § 2D1.1 is 34, based upon the drug amount of 1.45 kilograms of methamphetamine "actual."

    b.      A reduction of two levels of acceptance of responsibility under U.S.S.G. § 3E1.1 applies; however, this stipulation is subject to recommendation of the United States Probation Office and the other provisions of this plea agreement. **If circumstances indicating that the defendant has not accepted responsibility become known after execution of this agreement, this stipulation is void and the defendant may object to the failure of the presentence report to recommend the reduction. The government's request to decrease the offense level by <u>one</u> additional level in accordance with U.S.S.G. § 3E1.1(b) is contingent on the defendant demonstrating acceptance of responsibility for the offense conduct and cooperating fully in recovering restitution for all relevant conduct.**

The parties understand that the Court is not bound by these stipulations. Furthermore, the parties specifically agree that other specific offense characteristics or guideline adjustments may increase or decrease the appropriate sentencing range. Nothing in this agreement will preclude argument by either party regarding any other specific offense characteristic or guideline adjustment.

Paragraph Nine of Movant's written plea agreement provides:

9. **GOVERNMENT'S AGREEMENT**: The United States Attorney for the Eastern District of Texas agrees not to prosecute the defendant for any additional non-tax- related criminal charges based upon the conduct underlying and related to the defendant's plea of guilty. After sentencing, the government will dismiss any remaining charges against this defendant.

Paragraph Twelve of Movant's written plea agreement provides:

12. **VOLUNTARY PLEA:** This plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises other than those set forth in this agreement.

Paragraph Thirteen of Movant's written plea agreement provides:

13. **WAIVER OF RIGHT TO APPEAL OR OTHERWISE CHALLENGE SENTENCE**: Except as otherwise provided in this paragraph, the defendant waives the right to appeal the conviction, sentence, fine, order of restitution, or order of forfeiture in this case on all grounds. The defendant further agrees not to contest the

conviction, sentence, fine, order of restitution, or order of forfeiture in any post-conviction proceeding, including, but not limited to, a proceeding under 28 U.S.C. § 2255. The defendant, however, reserves the right to appeal any punishment imposed in excess of the statutory maximum. The defendant also reserves the right to appeal or seek collateral review of a claim of ineffective assistance of counsel.

Paragraph Fifteen of Movant's written plea agreement provides:

15. **REPRESENTATION OF COUNSEL:** The defendant has thoroughly reviewed all legal and factual aspects of this case with defense counsel and is fully satisfied with defense counsel's legal representation. The defendant has received satisfactory explanations from defense counsel concerning each paragraph of this plea agreement, each of the defendant's rights affected thereby, and the alternatives to entering a guilty plea. After conferring with counsel, the defendant concedes guilt and has concluded that it is in the defendant's best interest to enter this agreement rather than proceeding to trial.

Paragraph Seventeen of Movant's written plea agreement provides:

17. **ENTIRETY OF AGREEMENT**: This Plea Agreement consists of this document and the sealed addendum required by Local Rule CR-49. References in this document to "agreement" or "Plea Agreement" refer to both this document and the sealed addendum. The defendant, the defendant's attorney, and the government acknowledge that this is a complete statement of the parties' agreement in this case. It supersedes all other plea agreements and may not be modified unless the modification is in writing and signed by all parties. No other promises have been made or implied.

*Phillips*, No. 1:18cr106 (Doc. #146).

II.     *Voluntariness of the Plea*

A defendant may, as part of a valid plea agreement, waive his statutory right to appeal his conviction on direct appeal and under 28 U.S.C. § 2255, if the waiver is knowing and voluntary. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994); *United States v. Melancon*, 972 F.2d 566 (5th Cir. 1992). The plea agreement will be upheld where the record clearly shows the defendant read and understood it and that he raised no question regarding any waiver-of-appeal issue. *United States v. Portillo*, 18 F.3d 290, 292-93 (5th Cir. 1994). "[A]n ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity

10

of the waiver or the plea itself." *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). Appellate "waivers require dismissal if (1) the defendant's waiver was knowing and voluntary and (2) the waiver applies to the circumstances at hand, based on the plain language of the plea agreement." *United States v. Meredith*, 52 F.4th 984, 986 (5th Cir. 2022) (citing *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005)). The Fifth Circuit has applied this inquiry to uphold waivers of appeal in a variety of contexts, including challenges to restitution, upward variances, and Guidelines enhancements. *Id.* (collecting cases).

In this case, Movant specifically reserved the right to assert claims of ineffective assistance of counsel. Therefore, Movant's claims against counsel are not waived and will be addressed below.

III.    *Ineffective Assistance of Counsel*

Movant brings this Motion to Vacate asserting that his conviction and sentence should be vacated because he was denied the effective assistance of counsel.

A.    Substantive Law

The Supreme Court has addressed the issue of what a movant must prove to demonstrate an actual ineffective assistance of counsel claim. *Strickland v. Washington*, 466 U.S. 668 (1984). In order to show that counsel was ineffective a movant challenging counsel's performance must demonstrate the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted in a breakdown of the adversarial process that renders the result unreliable.

*Strickland,* 466 U.S. at 687.  In order to demonstrate the first prong of this test, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness, with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance." *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994) (internal quotations omitted).  In order to overcome the presumption that counsel provided reasonably effective assistance, Movant must prove his attorney's performance was objectively unreasonable in light of the facts of Movant's case, viewed as of the time of the attorney's conduct.  *Strickland*, 466 U.S. at 689-90.  A reasonable professional judgment to pursue a certain strategy should not be second-guessed.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

"With respect to prejudice, a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Harrington v. Richter*,  562 U.S. 86, 104 (2011).

The burden of proof in a habeas corpus proceeding attacking the effectiveness of trial counsel is upon the movant, who must demonstrate counsel's ineffectiveness by a preponderance of the evidence.  *See Martin v. Maggio,* 711 F.2d 1273, 1279 (5th Cir. 1983).  A habeas petitioner must "affirmatively prove," not just allege, prejudice.  *Day,* 556 F.3d at 536.  If a petitioner fails to prove the prejudice part of the test, the court need not address the question of counsel's performance. *Id*.  A reviewing court "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy."  *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992).  In determining the merits of an alleged Sixth Amendment violation, a court "must be highly deferential" to counsel's conduct.  *Strickland,* 466 U.S. at 687.

Whether the representation was deficient is determined by applying an objective standard of reasonableness.  *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999).  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).  "There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  *Woodward v. Epps*, 580 F.3d 318, 329 (5th Cir. 2009) (quoting *Romero v. Lynaugh*, 884 F.2d 871, 876 (5th Cir. 1989)).

a.    Change of Plea Hearing

A review of the Change of Plea Hearing reveals Movant was aware of his rights and voluntarily entered a plea of guilty.  *See Phillips*, No. 1:18cr106 (Doc. #380).  At the hearing, Movant stated he was forty-five years old and had completed some college.  Movant acknowledged he was aware of his rights, such as the right to plead not guilty and receive a trial by jury, the right to assistance of counsel, the right to testify, the right to hear testimony against him, the right to compel the production of evidence, and the right to call and subpoena witnesses and cross-examine the witnesses called on behalf of the United States.  Movant acknowledged his understanding of the waiver of these rights and had no questions for the court.  *See Phillips*, No. 1:18cr106 (doc. #380 at *13-14).

Movant was advised of the elements of the charge against him and acknowledged that he understood each of the elements for the count against him.  Movant also acknowledged he understood these are the matters that the government is required to prove beyond a reasonable doubt in order to convict him if the case went to trial.  Further, Movant acknowledged that he understood the range of punishment for the count to which he was pleading guilty was a term of imprisonment

for not less than ten (10) years but not more than life, a fine not to exceed $10,000,000.00, a term of supervised release of at least five years but not more than life, a special assessment of $100.00, forfeiture of property involved in the criminal offense, restitution and costs of incarceration. Movant acknowledged he understood the range of punishment to which he would be exposed and all possible consequences of his guilty plea. *See Phillips*, No. 1:18cr106 (doc. #380 at *7-8).

Movant affirmed that he and his attorney had talked about how the advisory guidelines might apply to his case. Movant stated he understood that the court would not be able to determine his advisory guideline range until after the presentence report had been completed and both he and the Government had an opportunity to challenge the reported facts in the application of the guidelines recommended by the probation office. Movant also stated he understood that the sentence ultimately imposed may be different from any estimate his attorney may have given him and that the court has the authority in some circumstances to depart upward or downward from that range. *See Phillips*, No. 1:18cr106 (doc. #380 at *9-10).

Movant acknowledged that he had fully discussed with his attorney the facts of this case, the charges pending against him, and any possible defenses he might have. Movant stated he was satisfied with his attorney and was satisfied that counsel had fully considered all factors of his case. Counsel affirmed that Movant had been competent and able to cooperate with her, and she joined in his decision to plead guilty. Movant acknowledged that he was pleading guilty voluntarily and no one had forced him, threatened him, or coerced him in any way to get him to plead guilty or accept the plea agreement. *See Phillips*, No. 1:18cr106 (doc. #380 at *10-12).

Movant and his attorney signed the plea agreement confirming that it was the entire plea agreement, that no other promise has been made or implied, and that the agreement was entered into freely, voluntarily, and upon advice of counsel. Movant acknowledged that he had read the plea

14

agreement or had it read to him and had carefully reviewed every part of it with his attorney, that he understood the terms of the plea agreement, and voluntarily agreed to it. *See Phillips*, No. 1:18cr106 (doc. #380 at *14-20).

Movant stated he previously had been treated for manic depression, PTSD, and addiction to narcotic drugs, but there was nothing related to the treatment that would cause him to not understand the proceedings. Movant affirmed that he was not currently under the influence of any drug, medication or alcoholic beverage. Additionally, both Movant's counsel and counsel for the Government affirmed there was no reason to doubt Movant's competence to plead guilty. *See Phillips*, No. 1:18cr106 (doc. #380 at *11-13).

Movant also signed a Factual Basis in this case. Paragraph Five of the Factual Basis states the following: "[H]ad this matter proceeded to trial, the Government, through the testimony of witnesses . . . and through admissible exhibits, would have proven, beyond a reasonable doubt, each and every essential element of the offense alleged in the indictment; specifically, the Government would have proven the following stipulated facts . . . ." *See Phillips*, No. 1:18cr106 (doc. #145 at *2). The following pages detailed his participation with several co-defendants concerning the possession and distribution of methamphetamine and marijuana. Both Movant and counsel signed the Factual Basis, acknowledging Movant had read the Factual Basis and Stipulation and the Indictment, or had them read to him and had discussed them with his attorney. Movant acknowledged that he fully understood the contents of the Factual Basis and Stipulation and agreed without reservation that it accurately describes the events and his acts, and counsel affirmed Movant was knowingly and voluntarily agreeing to the stipulated facts. *Id.* at *5-6. While under oath at the Plea Hearing in this case, Movant agreed that had read the entire Factual Basis and Stipulation, and had discussed them with his attorney. *See Phillips*, No. 1:18cr106 (doc. #380 at *19-20).

A review of the record in this case reveals that Movant's current assertions are directly contradicted by his assertions made in open court under oath. The hearing transcript reveals that the court reviewed each element the Government would have to prove for Movant to be convicted in this matter. Movant affirmed he understood all of the elements of proof required and understood the nature of the charge against him. Additionally, Movant signed the Factual Basis which detailed Movant's participation in the charged offense and acknowledged the Government could prove these facts if he had gone to trial.

Movant's current assertions do not compel the conclusion that his plea was either unknowing or involuntary. "[A] defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). "'Solemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.'" *Cervantes*, 132 F.3d at 1110 (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)). In light of the statements Movant made as part of the plea agreement, the Factual Basis, and in open court, it cannot be concluded that Movant's plea was involuntary or unknowingly entered. The record in this case demonstrates Movant's plea was knowing, voluntary and intelligent.

B.    Claims Presented

I.    *Failing to Argue a Double Jeopardy Issue*

Movant contends counsel provided ineffective assistance because he failed to assert a double jeopardy issue---that drugs which were part of a state case against him should not have been used against him in his federal case. Movant argues that his sentence was enhanced for the inclusion of four ounces of methamphetamine for which he was convicted in the state court.

16

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be twice put in jeopardy of life or limb for the same offense. U.S. CONST. amend. V. The Double Jeopardy Clause provides protection from multiple prosecutions as well as multiple punishments for the same offense. *See United States v. Reyes,* 87 F.3d 676, 678 (5th Cir. 1996). Consideration of relevant conduct in determining a defendant's federal sentence within an authorized punishment range, however, does not violate the prohibition against multiple punishments because it does not constitute punishment for that conduct within the meaning of the Double Jeopardy Clause. *See Witte v. United States*, 515 U.S. 389, 397 (1995).

The Respondent asserts that the state offense was not included in either calculating his federal criminal history score or enhancing the offense level; therefore, the four ounces of methamphetamine was properly included in calculating the relevant drug quantity for guidelines purposes.

A review of the Presentence Investigation Report reveals that Movant was held accountable for 1.45 kilograms of methamphetamine for a base offense level of 34, as agreed to in the written plea agreement. Further, the concerned state offense was not included in calculating Movant's criminal history score or enhancing his offense level. *Phillips*, No. 1:18cr106 (doc. #263 at *9). Additionally, a review of the Sentencing Hearing transcript confirms that the drugs were not considered as either a part of the conspiracy or relevant conduct because it was believed that the case would be counted as a prior conviction, and counsel vigorously argued against the Government's attempt to include any additional drug amounts. *Phillips*, No. 1:18cr106 (doc. #379 at *4-11). Accordingly, Movant has failed to show either deficient performance or prejudice. Movant's claim is without merit and should be denied.

17

ii.     *Failing to Argue Minimal Role*

Next, Movant contends counsel provided ineffective assistance of counsel for failing to argue for a reduction at sentencing for his alleged minimal role.  Movant contends that counsel's failure to raise this issue shows counsel's loyalty to the prosecutor and could be proof counsel had a conflict of interest.  Movant argues that evidence showed he was paid seven grams of drugs to smoke for getting a witness drugs.  Movant argues that it was evident he was not selling drugs, but was only trying to feed his addiction.

The Respondent asserts that Movant has failed to show counsel provided ineffective assistance because he provided no evidence as to his alleged minimal role in the conspiracy other than his conclusory statement.  Additionally, the Respondent argues that Movant is now contradicting what he stipulated to as his sole responsibility in both the factual basis and plea agreement.  Accordingly, the Respondent argues that counsel was not ineffective for failing to argue a frivolous point.  Additionally, the Respondent argues that Movant's claim that counsel had a conflict of interest, without any evidence in support of his claim, is not enough to show ineffective assistance of counsel.

A downward adjustment for a minor participant is appropriate where a defendant was substantially less culpable than the average participant.  *United States v. Giraldi*, 86 F.3d 1368, 1378-79 (5th Cir. 1996).  A criminal defendant must provide evidence showing that his role in the conspiracy was minimal.  *United States v. Medrano-Velasco*, 784 F. App'x 183, 185 (5th Cir. 2019).

Here, Movant stipulated to his involvement in the delivery of 91.24 grams of methamphetamine which involved a co-conspirator delivering drugs to Movant and Movant then delivering the drugs to another unindicted co-conspirator who was stopped by law enforcement authorities.  Additionally, Movant stipulated that conversations intercepted by wire intercepts

revealed he was involved in the purchase of an additional 1.35 kilograms of methamphetamine. *See* Factual Basis (doc. 145 at *2).

Movant's argument now that the drugs were to feed his addiction directly contradicts what Movant stipulated to in his Factual Basis, and Movant has offered no evidence in support of his current contention. Further, Movant has provided no evidence other than his own conclusory statement to support his assertion that counsel had a conflict of interest or was loyal to the Assistant United States Attorney. Movant's unsupported allegations of ineffective assistance of counsel do not establish either deficient performance or actual prejudice. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("conclusional allegations" and general claims are insufficient to establish ineffective assistance or to require an evidentiary hearing on that issue); *see also United States v. Holmes*, 406 F.3d 337, 361 (5th Cir. 2005) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue") (quoting *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998)). Accordingly, Movant has failed to show either deficient performance or prejudice and this ground for review should be denied.

### iii.    *Failing to Argue for a Lower Sentence*

In ground three of his Motion, Movant argues he was sentenced to a "high sentence" even though a co-conspirator, Mejia, told the Government that Movant was not part of the conspiracy. Movant claims counsel knew this fact and failed to advocate for fairness.

The Respondent asserts that to the extent Movant now complains about the sentence imposed by the court, Movant's claim is barred by the appellate/collateral-review waiver contained in his plea agreement. Further, the Respondent asserts that Movant's claim against counsel is frivolous.

As set forth above, Movant's plea of guilty entered in this case was knowing and voluntary. Therefore, the Government is entitled to enforce the waiver with respect to the sentence as they have

elected to do in this case. *See Portillo*, 18 F.3d at 292-93 ("[W]hen the record . . . clearly indicates that a defendant has read and understands his plea agreement, and that he raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed."). Accordingly, Movant's claim is without merit.

Moreover, as set forth above, Movant stipulated to his involvement in the conspiracy and the amount of drugs attributable to him in the Factual Basis. Movant's current assertion that he was not involved in the conspiracy is baseless.

"[S]olemn declarations in open court carry a strong presumption of verity." *United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009). A defendant's admissions in the factual resume and during the plea colloquy are "pivotal" and "will not easily be discounted, especially when there are no other statements in the factual resume which conflict with his admission or otherwise cause a court to question the defendant's veracity." *United States v. Ramos-Rodriguez*, 136 F.3d 465, 468-69 (5th Cir. 1998). Movant's claim regarding counsel is unsupported and without merit. Movant has failed to show either deficient performance or prejudice. Accordingly, this ground for review should be denied.

<em>iv.    Failing to Argue for Time Credit</em>

In ground four, Movant contends counsel provided ineffective assistance for failing to argue for a one-year time credit for time spent in federal custody. The Respondent contends this claim is moot because Movant's sentence was later reduced for the time he spent in federal custody.

Movant's claim that counsel failed to argue for credit for time spent in federal custody is refuted by the record. At the sentencing hearing, counsel successfully argued Movant's sentence should be adjusted to reflect the time Movant served on the state case as it was relevant to this case. *See Phillips*, No. 1:18cr106 (doc. #379 at *14-19). Further, Movant was later credited the additional

20

twelve months, and a second amended judgment was entered on October 13, 2020. *Phillips*, No. 1:18cr106 (doc. #373). Thus, Movant has failed to show counsel's performance was deficient or any related prejudice. Further, as the Respondent asserts, the time credit claim is now moot because Movant has been credited with time spent in state custody. Accordingly, Movant's ground for review is without merit and should be denied.

> v.    *Failing to Inform Movant of Right to Appeal*

Finally, Movant argues that counsel provided ineffective assistance by failing to inform him of his right to appeal and failing to show him any evidence pertaining to the case other than a limited amount of discovery.

In *Roe v. Flores-Ortega*, the Supreme Court explained how the *Strickland* test applies in the context of counsel's failure to file an appeal "when the defendant has not clearly conveyed his wishes [regarding an appeal] one way or the other." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.*, at 480. "In making this determination, courts must take into account all the information counsel knew or should have known." *Id.*

In this case, Movant has failed to show any nonfrivolous grounds for appeal. As set forth above, Movant's arguments that counsel provided ineffective assistance by failing to assert a double jeopardy issue, failing to argue a minimal role, failing to argue for a lower sentence because he was not part of the conspiracy, and failing to argue for time credits are all without merit. Movant's conclusory claim that counsel failed to show him any evidence is equally meritless. "Mere

conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Holmes*, 406 F.3d at 361.

Additionally, Movant was informed of his right to appeal by the court at his sentencing hearing, and he was advised that, with few exceptions, any notice of appeal must be filed within 14 days of judgment being entered in the case. Movant voiced no interest in appealing on the record. Moreover, Movant was advised that if he so requested, the clerk of court would prepare and file a notice of appeal on his behalf. *Phillips*, No. 1:18cr106 (Doc. 379 at *22-24). Accordingly, Movant's bald assertion that counsel failed to inform him of his right to appeal in this particular case is insufficient to show deficient performance. Additionally, Movant has failed to show a reasonable probability that the outcome of the proceeding would have been different; thus, he has failed to make the requisite demonstration of prejudice. Therefore, Movant's claims are without merit and the motion to vacate should be denied and dismissed.

## Recommendation

Movant's motion to vacate, set aside or correct sentence should be denied and dismissed.

## Objections

Within fourteen days after being served with a copy of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636 (b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United*

*Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); Fᴇᴅ. R.

Cɪᴠ. P. 72.

**SIGNED this the 2nd day of August, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE